**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UKIAH AUTOMOTIVE INVESTMENTS,<br><br>        Plaintiff,<br>   v.<br><br>MITSUBISHI MOTORS OF NORTH AMERICA, INC., et al.,<br><br>        Defendants<br>_____<br>MITSUBISHI MOTORS CREDIT OF AMERICA, INC.,<br><br>        Counterclaimant<br>   v.<br><br>UKIAH AUTOMOTIVE INVESTMENTS,<br><br>        Counterdefendant<br>_____<br>MITSUBISHI MOTORS CREDIT OF AMERICA, INC.,<br><br>        Cross-claimant<br>   v.<br><br>THOMAS COGLIANO,<br><br>        Cross-defendant<br>_____<br>UKIAH AUTOMOTIVE INVESTMENTS,<br><br>        Counterclaimant, and<br>THOMAS COGLIANO,<br><br>        Cross-claimant<br>   v.<br><br>MITSUBISHI MOTORS OF NORTH AMERICA, INC., et al.<br><br>        Counterdefendants and cross-defendants<br>_____/ | No. 04-3932 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MITSUBISHI MOTORS NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MITSUBISHI MOTORS CREDIT OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT; DENYING MOTION OF COUNTER-DEFENDANT UKIAH AUTOMOTIVE INVESTMENTS, INC. AND CROSS-DEFENDANT THOMAS COGLIANO FOR SUMMARY JUDGMENT; REMANDING CLAIMS; VACATING HEARING** |

Before the Court are three motions for summary judgment, each filed June 9, 2006: (1) Mitsubishi Motors North America, Inc.'s ("MMNA") motion for summary judgment of the claims alleged against it in the Third Amended Complaint, Counterclaims, and Crossclaims ("TACCC") filed by Ukiah Automotive Investments, Inc. ("UAI") and Thomas Cogliano ("Cogliano"); (2) Mitsubishi Motors Credit of America, Inc. ("MMCA") motion for summary judgment of the claims alleged against it in the TACCC, and the claims MMCA has alleged in its Counterclaim and Crossclaim against UAI and Cogliano; and (3) the motion of UAI and Cogliano for summary judgment of the claims asserted against them in MMCA's Counterclaim and Crossclaim. Having reviewed the papers filed in support of and in opposition to the motions, the Court deems the motions suitable for decision on the papers, VACATES the hearing scheduled for July 14, 2006, and rules as follows.

## BACKGROUND[1]

UAI is a corporation that operated a Mitsubishi motor vehicle franchise in Ukiah, California. Cogliano is the sole shareholder and operator of UAI. MMNA is the distributor of Mitsubishi motor vehicles in the United States. MMCA is a corporation that provides financing for Mitsubishi dealers.

UAI opened for business in May 2002. (See Cogliano Decl., filed June 9, 2006, ¶ 2.) Prior to the opening, UAI and MMCA, on April 8, 2002, entered into a Motor Vehicle Inventory Loan and Security Agreement ("Inventory Loan Agreement"), under which MMCA agreed to provide financing for UAI's acquisition of new and used vehicles, (see Braverman Decl. Ex. A), and, on April 8, 2002, Cogliano signed a Continuing Guaranty, in which he agreed to guarantee payment of any amounts due to MMCA by UAI, (see id. Ex. F). On May 8, 2002, UAI and MMNA, through its predecessor, entered into an Interim Sales and Service Agreement ("Interim Agreement"), under which UAI would become a Mitsubishi dealer for a period of one year. (See Kuhnle Decl., filed June 9, 2006, Ex. G.) On May 15, 2002, UAI and MMCA entered into an Installment Notice agreement, under which MMCA

---

[1]The following facts are undisputed.

2

loaned UAI $200,000.  (See Braverman Decl. ¶ E.)  Thereafter, on February 3, 2003, UAI and MMNA entered into a Dealer Sales and Service Agreement ("Second Agreement"), under which UAI would remain a Mitsubishi dealer for a period of three years.  (See id. Ex. J.)

UAI ceased operations in October 2004.  (See id. ¶ 27.)  While UAI was operating, UAI had disputes with MMNA, including UAI's claim that MMNA had delivered unordered vehicles to UAI and had refused to pick up such unordered vehicles as requested by UAI.  (See Kuhnle Decl., filed June 9, 2006, Ex. A at 675:5-20.)  UAI also had disputes with MMCA, including UAI's claim that MMCA had financed new vehicles on behalf of UAI that UAI had not ordered and had raised UAI's credit line under the Inventory Loan Agreement without UAI's consent.  (See Cogliano Decl., filed June 23, 2006, ¶¶ 4-5.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (quoting Rule 56(c)).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty

3

1  Lobby, 477 U.S. at 249-50 (citations omitted).  "'[I]nferences to be drawn from the
2  underlying facts," however, "must be viewed in the light most favorable to the party
3  opposing the motion.'"  See Matsushita, 475 U.S. at 587 (quoting United States v. Diebold,
4  Inc., 369 U.S. 654, 655 (1962)).

**DISCUSSION**

6  In the TACCC, UAI and Cogliano allege that MMNA and MMCA engaged in
7  violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.
8  §§ 1961-1964.  Additionally, UAI and Cogliano allege various state law claims, including
9  fraud and breach of contract.  In its Counterclaim and Crossclaim, MMCA seeks relief
10 under state law, specifically, relief under the provisions of its agreements with UAI and
11 under the Continuing Guarantee signed by Cogliano.

12 **I. Claims Against MMNA**

13     **A. RICO Claim Against MMNA**

14 In Count IV of the TACCC, UAI alleges MMNA violated 18 U.S.C. § 1962(c) by
15 "engag[ing] in a "pattern of racketeering activity," specifically, by using "mailings, telephone
16 conversations, faxes, and emails" to "defraud UAI into investing substantial sums of money
17 into a dealership and product line that was effectively worthless."  (See TACCC ¶¶ 147-48.)
18 As clarified in the opposition, UAI asserts MMNA made false representations to induce UAI
19 to enter into the Interim Agreement in May 2002 and the Second Agreement in February
20 2003.  (See Combined Mem. Of P. & A., filed June 23, 2006 ("Pls.' Opp."), at 4:2-22.)

21 "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a
22 pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496
23 (1985).  "Racketeering activity" is "any act 'chargeable' under several generically described
24 state criminal laws, any acts 'indictable' under numerous specific federal criminal
25 provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or
26 securities fraud or drug-related activities that is 'punishable' under federal law."  See id. at
27 481-82 (quoting 18 U.S.C. § 1961(1)).

28 In the TACCC, the alleged racketeering activities are identified as mail and wire

1  fraud.  (See TACCC ¶ 148.)  In the opposition to MMNA's motion, however, UAI relies on
2  additional racketeering activity, specifically, MMNA's assertedly having coerced UAI into
3  accepting delivery of unordered vehicles, in violation of § 11713.2(a) of the California
4  Vehicle Code.[2]  (See Pls.' Opp. at 12:18 - 13:1.)

5         As defined in 18 U.S.C. § 1961(1), "racketeering activity means . . .any act or threat
6  involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in
7  obscene matter, or dealing in a controlled substance or listed chemical (as defined [under
8  federal law]), which is chargeable under State law and punishable by imprisonment for
9  more than one year."  See 18 U.S.C. § 1961(1)(A).[3]  As MMNA points out, a violation of
10 § 11713.2(a) is not a crime involving murder, kidnapping, or any of the other criminal acts
11 described in § 1961(1)(A).  Further, a violation of § 11713.2(a) is not punishable by
12 imprisonment for more than one year.  See Cal. Veh. § 40000.11(a) (providing violations of
13 "Division 5" of Vehicle Code, §§ 11100-12122, are misdemeanors).  Consequently, even
14 assuming MMNA was afforded fair notice of such newly-advanced theory, violations of
15 § 11713.2(a) do not, as a matter of law, constitute racketeering activity and, accordingly,
16 cannot support a RICO claim under § 1962.

17        With respect to mail and wire fraud, the acts on which UAI relies pertain to MMNA's
18 having made false statements to UAI concerning MMNA's profits and manufacturing plans,
19 as well as the profitability of a Ukiah dealership.  (See Cogliano Decl., filed June 23, 2006,
20 ¶¶ 2, 3); see, e.g., Kuhnle Decl., filed June 9, 2006, Ex. A (Cogliano Dep.) at 323 (stating
21 Paul Minihan, MMNA's Regional Business Development Manager, told UAI that new model
22 pick-up truck would be available in "approximately 12 months, but more likely in eight
23 months").

---

[2] Under California law, it is unlawful for a vehicle manufacturer or distributor "to coerce or attempt to coerce any dealer" to "order or accept delivery of any motor vehicle . . . which shall not have been voluntarily ordered by the dealer." See Cal. Veh. Code § 11713.2(a).

[3] A RICO claim also may be predicated on various federal crimes. See 18 U.S.C. § 1961(1)(B)-(G).

MMNA argues that any claim based on such statements has been extinguished by reason of the general release included in the Second Agreement, executed on February 5, 2003. The release provides as follows:

> Except as herein otherwise provided, upon execution of this Agreement by [UAI] and in consideration of [MMNA's] entering into this Agreement, [UAI] releases [MMNA] from any and all claims, demands, contracts and liabilities (including, but not limited to, statutory liabilities), known or unknown, of any kind or nature whatsoever, arising from or out of or in connection with any such prior agreements, business transactions, course of dealing, discussions or negotiations between the parties prior to the effective date hereof. [UAI] expressly acknowledges and waives the application of California Civil Code § 1542 which provides as follows: 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known to him must have materially affected his settlement with the debtor.'

(See Kuhnle Decl., filed June 9, 2006, Ex. J ¶ 12.)

To the extent UAI's RICO claim is based on the theory that MMNA committed mail fraud and wire fraud by inducing UAI to enter into the Interim Agreement in May 2002, the RICO claim, whether known or unknown to UAI on February 5, 2003, falls within the scope of the above-quoted release. In its opposition, UAI does not argue otherwise; rather, UAI argues the release provision in the Second Agreement is unenforceable because MMNA fraudulently induced UAI to enter into the Second Agreement. UAI cites no evidence to support a finding that UAI was so induced, however, and thus has failed to establish a triable issue of fact as to fraudulent inducement with respect to the Second Agreement. Indeed, the only evidence offered on the issue, which is offered by MMNA, is to the contrary, specifically, Cogliano's deposition testimony, in which he expressly denied he relied on any statements, let alone false statements made by MMNA, when he signed the Second Agreement on behalf of UAI. (See id. Ex. A at 186:4-6) ("Q: [D]id you rely on any fraudulent statements in deciding to sign [the Second] agreement? A: I relied on no statements.").

Accordingly, MMNA is entitled to summary judgment on UAI's RICO claim, specifically, Count IV of the TACCC.

//

### B. State Law Claims Against MMNA

To the extent UAI's state law claims against MMNA arose before February 5, 2003, MMNA likewise is entitled to summary judgment, in light of the general release set forth in the Second Agreement.

To the extent UAI's state law claims against MMNA arose on or after February 5, 2003, and to the extent the state law claims against MMNA are alleged by Cogliano, the Court will, for the reasons expressed infra, remand such claims to state court.

## II. Claims Against MMCA

In Count XIII of the TACCC, UAI alleges MMCA violated RICO "through numerous mailings, telephone conversations, faxes, and emails, intentionally set out, by way of a scheme of multiple lies concerning contrived credit obligations, lies concerning purported and non-existent contractual duties, rights and obligations, and lies regarding rights of possession to business and personal assets to defraud and coerce." (See TACCC ¶ 204.) In Count XIV of the TACCC, Cogliano alleges MMCA violated RICO in the same manner as set forth in Count XIII, and, additionally, that MMCA made to Cogliano "multiple misrepresentations concerning the continued availability of MMCA's '0/0/0' financing program" and other misrepresentations to induce Cogliano to sign the Continuing Guarantee. (See id. ¶¶ 212-220.)

As with the RICO claim alleged against MMNA, the RICO claims alleged by UAI and Cogliano against MMCA assertedly are based, in part, on the theory that violations of §11713.2(a) of the California Vehicle Code constitute racketeering activity. (See Pls.' Opp. at 12:18 - 13:1.) As discussed above, a violation of § 11713.2(a) will not support a RICO claim under § 1962.

With respect to mail and wire fraud, the Court, at the outset, observes that UAI and Cogliano seek to hold MMCA liable for statements made by MMNA. (See, e.g., Pls.' Opp. at 11:18-19, 25-27 (asserting MMCA "knew it was false" when "MMNA lied about what their own market study showed").) UAI and Cogliano offer no evidence, however, to support their assertion that MMCA was aware MMNA had made false statements to UAI and

1  Cogliano, or even advance a theory of liability on the part of MMCA for statements made by
2  MMNA, other than by referring in conclusory fashion to MMNA and MMCA's having
3  "conspired amongst themselves and engaged in an orchestrated plan." (See Pl.'s Opp. at
4  3:20-21.) "A mere allegation of conspiracy without factual specificity is insufficient" to
5  establish a claim of conspiracy. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d
6  621, 626 (9th Cir. 1988). Consequently, UAI and Cogliano cannot base a RICO claim
7  against MMCA on any statements made to them by MMNA.

8  With respect to statements made by MMCA, some of the statements identified in
9  UAI and Cogliano's opposition are, as MMCA points out, set forth without any citation to
10 evidence. For example, UAI and Cogliano assert "it was further represented that [ ]
11 Cogliano would receive financial assistance from MMCA in terms of a mortgage for the
12 purchase of the dealership's real estate thereby insuring that his operating costs would
13 remain low," (see Pls.' Opp. at 4:6-9), but fail to cite any evidence to support a finding that
14 any such statement was made by MMCA.[4] There being no "specific facts showing that
15 there is a genuine issue for trial" as to such statements, the Court will consider only those
16 statements as to which UAI and Cogliano have offered evidence. See Celotex, 477 U.S. at
17 324; see also Carmen v. San Francisco Unified Sch. Dist., 237 F. 3d 1026, 1031 (9th Cir.
18 2001) (holding district court not required to "examine the entire file for evidence establishing
19 a genuine issue of fact, where the evidence is not set forth in the opposing papers with
20 adequate references").

21 The only evidence offered by UAI and Cogliano to support the existence of any
22 statements by MMCA is the declaration of Cogliano.[5] Cogliano declares that prior to the
23 opening of UAI, Cogliano, in addition to speaking to MMNA employees John Patterson,

---

[4] Additionally, by using the passive tense, UAI and Cogliano fail to identify the speaker as an MMCA employee.

[5] MMCA has offered excerpts from Cogliano's deposition, both in support of its motion, (see Geck Decl. Ex. A), and in opposition to UAI and Cogliano's motion, (see Kuhnle Decl., filed June 23, 2006, Ex. A.) Those excerpts do not include any testimony by Cogliano in which Cogliano sets forth the content of any asserted false representation made by MMCA to UAI and/or Cogliano.

8

Paul Minihan, and Tim Flanagan, spoke to Frank Duran ("Duran"), an MMCA employee.[6] (See Cogliano Decl., filed June 23, 2006, ¶ 2.) According to Cogliano, one or more of the individuals to whom he spoke made "representations of projections for new car sales by a new Mitsubishi dealership in Ukiah, the '0/0/0' financing program, and new car sales figures for Mitsubishi nationally," which were "false." (See id.) This evidence is insufficient to create a triable issue of fact. Even assuming Duran made representations as to each of the topics identified in Cogliano's declaration, Cogliano fails to identify therein, or even paraphrase, the actual representation Duran made, thus making it impossible to determine whether the representation was false when made, or that any detrimental reliance upon such representation was reasonable. See Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F. 2d 730, 738 (9th Cir. 1979) (holding conclusory statements in declaration insufficient under Rule 56 to create triable issue of fact).

Additionally, Cogliano declares that after UAI was in operation, UAI received unordered cars from MMNA, which MMCA financed under the Inventory Loan Agreement. (See Cogliano Decl., filed June 23, 2006, ¶ 6.) Cogliano states that he made "multiple and continuing requests of [ ] Duran to get the cars off [UAI's] lot, to which Duran responded by stating, "MMNA ships the cars, we [MMCA] pay for them; it's happening to everyone one. Deal with it." (See id. ¶ 13.) Although Cogliano, in his declaration, does not explain why such comments were false, UAI and Cogliano appear to be relying on a theory that Duran falsely represented the nature of MMCA's duties under the Inventory Loan Agreement. (See TACCC ¶ 204 (alleging MMCA made misrepresentations "concerning purported and non-existent contractual duties"); Pls.' Opp at 20:20 ("MMCA misrepresented its rights under the Inventory Loan Agreement.").)

"It is well settled that, to maintain a civil RICO claim predicated on mail fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury." Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004). Under the Inventory

---

[6]There is no evidence in the record as to Duran's title or position at MMCA.

1 Loan Agreement, the parties agreed that MMNA would report to MMCA when UAI had
2 ordered a new vehicle from MMNA, and MMCA would then finance the vehicle by
3 transmitting payment to MMNA the day after the vehicle was shipped by MMNA to UAI.
4 (See Braverman Decl. Ex. A ¶ 7, Ex. D.)  Assuming, arguendo, as UAI and Cogliano
5 contend, the Inventory Loan Agreement can be interpreted as requiring MMCA to refuse to
6 finance a new vehicle if UAI informs MMCA that UAI received a new vehicle from MMNA
7 that UAI had not ordered, and further assuming the above-quoted statement by Duran can
8 be understood as falsely expressing or falsely implying the nature of MMCA's duties under
9 the Inventory Loan Agreement, UAI and Cogliano fail to explain how, let alone offer
10 evidence to support a finding that, they could have relied to their detriment on such false
11 representation.[7]  Indeed, Cogliano on behalf of UAI, is a signatory to that agreement.  (See
12 Geck Decl. Ex. A (Cogliano Dep.) at 606:6 - 608:6.)

13 Finally, UAI and Cogliano fail to offer any evidence to support a finding that any false
14 statements MMCA allegedly made are actionable under the federal mail and/or wire fraud
15 statutes, specifically, evidence that any false statement was communicated by wire or use
16 of the United States mail rather than in another manner, such as in person.  See, e.g.,
17 Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n, 366 F. Supp. 2d 792, 806
18 (W.D. Wis. 2005) (holding allegation defendant made false statements in person at
19 meetings not mail or wire fraud, and thus insufficient to allege racketeering activity in
20 violation of RICO).

21 Accordingly, MMCA is entitled to summary judgment on the RICO claims alleged
22 against it, specifically, Counts XIII and XIV of the TACCC.
23 //
24

---

[7] If UAI and Cogliano are correct in their interpretation of the Inventory Loan Agreement, they may be able to demonstrate an injury by reason of MMCA's breach of its contractual obligations.  To maintain a RICO claim based on a mail fraud or wire fraud theory, however, the injury must be caused by the false representation.  See Poulos, 379 F. 3d at 665 (holding RICO claim premised on mail fraud could not satisfy causation requirement, in absence of showing asserted injury was "causally linked" to alleged misrepresentations).

**II. Remaining State Law Claims**

The Court's jurisdiction over the instant action is based on the existence of a federal question, specifically, the RICO claims. (See Notice of Removal, filed September 17, 2004, ¶¶ 1, 4.) Each claim alleged by UAI and Cogliano, other than the RICO claims, and each claim alleged by MMCA arise under state law, and, thus, the Court's jurisdiction over such claims is supplemental in nature. See 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3). Where a district court has granted summary judgment on the only federal claims in an action, the district court, pursuant to § 1367(c)(3), may properly decline to exercise supplemental jurisdiction over the remaining state law claims. See Bryant v. Adventist Health System/West, 289 F. 3d 1162, 1169 (9th Cir. 2002).

The Court will decline to exercise supplemental jurisdiction over UAI's remaining state law claims, Cogliano's state law claims, and MMCA's state law claims.

## CONCLUSION

For the reasons stated above:

1. MMNA's motion for summary judgment is hereby GRANTED as to Count IV of the TACC. The motion is hereby GRANTED as to Counts I-III and V-VII, UAI's state law claims against MMNA, to the extent such claims arose before February 5, 2003. In all other respects, MMNA's motion is DENIED without prejudice.

2. MMCA's motion for summary judgment is hereby GRANTED as to Counts XIII and XIV. In all other respects, MMCA's motion is DENIED without prejudice.

3. UAI and Cogliano's motion for summary judgment is hereby DENIED without prejudice.

//
//
//
//

11

    4. MMCA's state law claims, Cogliano's state law claims, and UAI's remaining state law claims are hereby REMANDED to the Superior Court of the State of California, in and for the County of Mendocino.

**IT IS SO ORDERED.**

Dated: July 25, 2006

MAXINE M. CHESNEY
United States District Judge